**2024 IL 130323**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130323)

HABDAB, LLC, Appellant, v. THE COUNTY OF LAKE *et al.*, Appellees.

*Opinion filed November 21, 2024.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Neville, Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1        Plaintiff Habdab, LLC, filed a complaint for declaratory judgment in the circuit court of Lake County against defendants County of Lake (County) and the Village of Mundelein (Village) seeking to invalidate certain fees imposed on it pursuant to an intergovernmental agreement. The complaint was premised on plaintiff's claim that the fees violated the Road Improvement Impact Fee Law (Impact Fee Law) (605 ILCS 5/5-901 to 5-919 (West 2022)) and that plaintiff had an interest in

avoiding the payment of unconstitutional road improvement impact fees. The County and plaintiff filed cross-motions for summary judgment. The circuit court denied plaintiff's motion and granted summary judgment in the County's favor. The appellate court affirmed. 2023 IL App (2d) 230006, ¶ 62. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3        On December 1, 2009, the County and three municipalities, the villages of Mundelein, Grayslake, and Libertyville, entered into an intergovernmental agreement, the "Central Lake County Transportation Improvement Intergovernmental Agreement" (IGA). The purpose of the IGA was to establish construction funding for future highway improvements in the central Lake County area. The improvements were intended to address existing and future traffic demands. Under the IGA, the County agreed to design and construct road improvements in exchange for a portion of the construction costs being reimbursed by fees collected from developers within the area upon the occurrence of a triggering factor. Annexation was one such factor.

¶ 4        The Impact Fee Law (605 ILCS 5/5-901 to 5-919 (West 2022)), which was not mentioned in the IGA but is relevant to this appeal, allows certain units of local government to adopt and implement road improvement impact fee ordinances and resolutions (see *id.* § 5-902). In the statute, the legislature has expressly recognized that the imposition of such road improvement impact fees allows local governments, while adhering to minimum standards and procedures set forth therein, to supplement other funding sources so that the burden of paying for road improvement can be allocated fairly and equitably. *Id.* The statute defines a "road improvement impact fee," in pertinent part, as "any charge or fee levied or imposed by a unit of local government as a condition to the issuance of a building permit or a certificate of occupancy in connection with a new development." *Id.* § 5-903.

¶ 5        The parties to the IGA agreed that the developers of any future commercial or residential developments would be collectively assessed 50% of the construction costs of the road improvements and the remaining 50% of the costs would be borne by the County as a public benefit. The IGA established six "Highway Improvement Areas" within the central Lake County area, and the parties created a schedule of

fees for each subarea. The fees for each subarea would be divided by the number of developable areas within each subarea and assessed against future developments, based on the number of acres contained within each development. The parties recognized that the County may pay more than 50% of the actual costs of the improvements, in the event the actual costs exceeded the estimated improvement costs.

¶ 6        Under the IGA, the villages agreed that, as a condition of annexation of any unincorporated territory located within the Central Lake County Area and within a Highway Improvement Area, the responsible village would "require the execution of an annexation agreement, which annexation agreement shall include among its terms the payment of FEES in accordance with this Agreement." The fees would be collected before granting "Final Development Approval," which was defined in the IGA for any development as "the latter of the grant of Zoning Relief, annexation approval, or final plat approval." If none of those applied, the fees would be collected upon "the issuance of the earlier of a grading permit, a site development permit, a building permit, or a certificate of occupancy."

¶ 7        Plaintiff and the Village entered into three successive annexation agreements. All three parcels were located within Highway Improvement Area 5 of the Central Lake County Area. Parcel 1, consisting of 6.6 acres, was annexed via an agreement, dated September 11, 2018, for a "clean fill" commercial development project. Parcel 2, consisting of 10.03 acres, was annexed to the Village for the same purpose via an amendment to the annexation agreement, dated July 22, 2019. On September 19, 2019, the County informed the Village by letter that plaintiff owed $191,581.90 in fees for parcels 1 and 2 under the terms of the IGA. The County told the Village that the fees must be paid before the County would issue a construction access permit for the properties.

¶ 8        On August 25, 2020, plaintiff filed a declaratory judgment complaint against the County and the Village seeking a declaration that it was not obligated to pay the fees that flowed from the IGA. In count I, the only count at issue in this appeal, plaintiff asserted as to the County that the IGA fees did not meet the requirements set forth in the Impact Fee Law. Thus, plaintiff claimed that the County lacked the authority to impose the fees and could not condition the issuance of an access permit, or any other discretionary benefit, on plaintiff's agreement to pay them.

Plaintiff also alleged that it had a tangible legal interest in avoiding the payment of unconstitutional road improvement impact fees.[1]

¶ 9    On April 26, 2021, plaintiff and the Village entered into a second amendment to the annexation agreement, which provided for the annexation of a third parcel, consisting of 35 acres, for a further expansion of plaintiff's commercial clean fill operation. The amendment specified that plaintiff would be responsible for paying any fees arising out of the IGA as a result of "Final Development Approval." The amendment further stated that the parties agreed that any fees, as defined in the IGA and as a result of any final development "or otherwise, relative to any or all of the Combined Parcel," were the developer's responsibility to pay to the County. The Village and plaintiff agreed that plaintiff would not be required to pay any fees while this lawsuit challenging the County's right to charge and collect the fees remained pending. The three parcels were zoned agricultural before annexation and were then reclassified into the category of "R-1 Single Family Residential Zoning District." The amended agreement stated that the expected completion date of plaintiff's improvements on all three parcels was December 31, 2035.

¶ 10    On June 29, 2022, the County moved for summary judgment on count I. The County argued that the IGA fees, imposed on plaintiff and its three parcels of land, were not subject to the Impact Fee Law because they flowed from a voluntary annexation agreement between plaintiff and the Village. The County asserted that the fees were not "road improvement impact fees" under the Impact Fee Law because they were not conditioned on the issuance of a building permit or a certificate of occupancy. Instead, the fees to be collected were associated with a voluntary annexation agreement.

¶ 11    On August 23, 2022, plaintiff filed a cross-motion for summary judgment on count I. Plaintiff asserted that the fees were "road improvement impact fees" that did not comply with the Impact Fee Law. Plaintiff further argued that the IGA was the County's attempt to avoid the statutory requirements that were meant to ensure that a property owner's impact fees would be specifically attributed to the actual

---

[1]On October 5, 2020, the Village filed a counterclaim against plaintiff, seeking a declaration that plaintiff must pay any IGA fees related to the three parcels of land. The Village later voluntarily dismissed its counterclaim based on the parties' agreement in the second amended annexation agreement that plaintiff would pay the IGA fees for all three parcels if it was unsuccessful in this litigation.

impact of that property owner on the roadway system. Additionally, plaintiff stated that it had not agreed to contract away its constitutional rights and, invoking the doctrine of unconstitutional conditions, claimed that the IGA fees were unenforceable because they coerced landowners to pay the fees as a condition of receiving certain land use benefits from the Village.

¶ 12 On November 1, 2022, the trial court granted the County's motion for summary judgment as to count I of the complaint and denied plaintiff's cross-motion for summary judgment. The circuit court found that the IGA fees were not subject to the Impact Fee Law and that they could be collected by the County by way of the annexation agreements.

¶ 13 The appellate court affirmed. 2023 IL App (2d) 230006, ¶ 62. The court held that the IGA fees did not constitute "road improvement impact fees" under the Impact Fee Law. *Id.* ¶ 39. The Impact Fee Law defines "road improvement impact fees" as fees that are imposed " 'as a condition to the issuance of a building permit or a certificate of occupancy in connection with a new development.' " *Id.* ¶ 40 (quoting 605 ILCS 5/5-903 (West 2022)). The appellate court found that the fees were not imposed as a condition to the issuance of a building permit or certificate of occupancy, and thus they were not road improvement impact fees. *Id.* ¶ 41. Even if the County and the Village entered into the IGA to avoid the requirements of the Impact Fee Law, the court stated that it could not ignore the unambiguous statutory language. *Id.* ¶ 44.

¶ 14 The appellate court also found that the doctrine of unconstitutional conditions did not apply. *Id.* ¶ 57. Relying upon *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), the court recognized that unconstitutional conditions claims are evaluated under a two-part test that asks whether there is an essential nexus between the condition burdening rights and a legitimate state interest and, second, whether there is a "rough proportionality" between the burden on the individual and the harm the government seeks to remedy through the condition. 2023 IL App (2d) 230006, ¶ 48. The court found that a nexus exists between preventing further traffic congestion and providing for road improvements to ease that congestion, thereby meeting the first part of the test. *Id.* ¶ 54. It also found there was a rough proportionality between the burden on plaintiff and the harm the County seeks to remedy through the

condition. *Id.* ¶ 56. As a result, the court determined that the doctrine did not apply in this case. *Id.* ¶ 57.

¶ 15 This court granted plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 16                                         ANALYSIS

¶ 17 This case concerns whether the circuit court properly granted the County's motion for summary judgment in plaintiff's action seeking a declaratory judgment that the fees assessed as a condition of the annexation of the three parcels did not comply with the Impact Fee Law.

¶ 18 Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). Our standard of review is *de novo*. *Mancini Law Group, P.C. v. Schaumburg Police Department*, 2021 IL 126675, ¶ 15.

¶ 19                        I. Applicability of the Impact Fee Law

¶ 20 Plaintiff contends that the fees imposed under the IGA constitute road improvement impact fees that do not comply with the Impact Fee Law.[2] Plaintiff asserts that the appellate court's decision allows local government units to avoid the requirements of the Impact Fee Law by assessing road improvement fees outside the issuance of a building permit or certificate of occupancy. Specifically, plaintiff challenges the appellate court's finding that any impact fee assessed on a landowner for construction, alteration, or repair of roadways is not a "road improvement impact fee" if it is collected or assessed at any other time in the development process besides the issuance of a building permit or certificate of occupancy.

---

[2]Plaintiff has elected to stand on its petition for leave to appeal and has not filed an opening brief in this court. See Ill. S. Ct. R. 315(h) (eff. Oct. 1, 2021).

¶ 21     This issue presents a question of statutory construction of the Impact Fee Law. The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 473 (2005). The plain language of the statute remains the best indication of this intent. *Id.* Where the language of a statute is clear, we may not read into it exceptions that the legislature did not express, and we will give it effect as written. *Id.*

¶ 22     The Impact Fee Law is part of the Illinois Highway Code (605 ILCS 5/1-101 *et seq.* (West 2022)). It allows units of local government, meaning counties with a population over 400,000 and all home rule municipalities, to implement "road improvement impact fee ordinances and resolutions" to supplement other funding sources and to fairly allocate the burden of paying for road improvements. *Id.* §§ 5-902, 5-903. The Impact Fee Law is intended "to promote orderly economic growth throughout the State by assuring that new development bears its fair share of the cost of meeting the demand for road improvements through the imposition of road improvement impact fees." *Id.* § 5-902.

¶ 23     The Impact Fee Law specifically defines "road improvement impact fee" as follows:

> "[A]ny charge or fee levied or imposed by a unit of local government as a *condition to the issuance of a building permit or a certificate of occupancy* in connection with a new development, when any portion of the revenues collected is intended to be used to fund any portion of the costs of road improvements." (Emphasis added.) *Id.* § 5-903.

¶ 24     The impact fee payable by a developer "shall not exceed a proportionate share of costs incurred by a unit of local government which are specifically and uniquely attributable to the new development paying the fee in providing road improvements." *Id.* § 5-904. Furthermore, "[i]mpact fees shall be assessed by units of local government at the time of final plat approval or when the building permit is issued when no plat approval is necessary." *Id.* § 5-911. Such fees are "payable as a condition to the issuance of the building permit" when imposed on a residential development, consisting of one single family home, or "as a condition to the issuance of the certificate of occupancy" when imposed on "all other types of new development." *Id.* § 5-912.

- 7 -

¶ 25    Plaintiff contends that the fees imposed under the annexation agreements, which flow from the IGA, are road improvement impact fees that must comply with the Impact Fee Law and all the requirements contained therein. In plaintiff's view, by focusing on the definition section of the Impact Fee Law and the lack of ambiguity therein, the appellate court failed to consider the statute in its entirely and the purpose of the law. Plaintiff contends that, under the appellate court's construction, units of local government can use timing to avoid the statute's requirements and "eviscerate the legislative intent behind it." Plaintiff argues that there is no indication in the Impact Fee Law that the legislature found the timing of the fee payment crucial, creating a bar to the statute's applicability.

¶ 26    The County asserts that road improvement impact fees, in contrast to fees imposed as part of an annexation agreement, are levied or imposed as a condition to the issuance of a building permit or certificate of occupancy as provided in section 5-903. The County further asserts that fees imposed by way of an annexation agreement are governed by the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2022)) and can be collected by way of an annexation agreement.

¶ 27    As the appellate court correctly found, there is no ambiguity in the statutory language. The IGA fees do not constitute "road improvement impact fees" under the plain language of the Impact Fee Law. The IGA provides that payment of the highway improvement fees is a condition of annexation into the Village, while as noted above, the Impact Fee Law defines "road improvement impact fees" as fees imposed "as a condition to the issuance of a building permit or a certificate of occupancy in connection with a new development." 605 ILCS 5/5-903 (West 2022). The Municipal Code specifically allows municipalities to enter into annexation agreements with one or more of the owners of land in unincorporated territory. 65 ILCS 5/11-15.1-1 (West 2022). Additionally, the Municipal Code states that any such annexation agreement may provide for contributions of either land or monies, or both, to any municipality and to any other units of local government having jurisdiction over all or part of the land that is the subject of the annexation agreement. *Id.* § 11-15.1-2(d).

¶ 28    Plaintiff's reliance on *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25 (1995), is misplaced. That case did not involve the imposition of fees by way of a voluntary annexation agreement governed by the

Municipal Code, it did not consider the applicability of the statutory definition at issue in this case, and it partially concerned the constitutionality of a prior version of the Impact Fee Law.

¶ 29    Similarly, plaintiff's argument, that the fees fall within the definition of road improvement impact fees when read more broadly, considering the Impact Fee Law in its entirety and the purpose of the law, is unpersuasive. As the appellate court found, if the legislature intended to encompass into the Impact Fee Law every conceivable exaction of fees for highway improvements, it would not have limited the definition of "road improvement impact fees" contained in section 5-903. See 605 ILCS 5/5-903 (West 2022). The fact that the statute encompasses only fees levied as a condition to the issuance of either a building permit or certificate of occupancy may reflect, as the appellate court noted, that our legislature selected a point distinct from, and entirely unrelated to, any fees assessed as part of a voluntary annexation. 2023 IL App (2d) 230006, ¶ 41. Finally, even if the County and the three villages entered into the IGA to avoid the Impact Fee Law's requirements concerning the imposition of fees, this court cannot ignore the specific statutory language or read into the statute provisions or exceptions that the legislature has not expressed. Consequently, the fees imposed on plaintiff under the annexation agreements did not violate the Impact Fee Law.

¶ 30                    II. Unconstitutional Conditions Doctrine

¶ 31    Plaintiff contends that the appellate court also erred by holding that the requirement to pay the fees as a condition of the annexation of the three parcels into the Village did not violate the unconstitutional conditions doctrine.

¶ 32    The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 604 (2013). Conditions, including the surrender of a constitutional right, can lawfully be imposed on the receipt of a benefit, provided that such conditions are reasonable. *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000).

¶ 33    As recognized by this court in *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 29:

"Under the doctrine of 'unconstitutional conditions,' the 'government may not require a person to give up a constitutional right *** in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship' to the right. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). The Seventh Circuit has explained that the meaning of the doctrine is simply that 'conditions can lawfully be imposed on the receipt of a benefit—conditions that may include the surrender of a constitutional right, such as the right to be free from unreasonable searches and seizures—provided the conditions are reasonable.' *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000). The Supreme Court has adopted a two-part test for evaluating unconstitutional conditions questions: first, is there an essential nexus between the condition burdening rights and a legitimate state interest and second, is there a 'rough proportionality' between the burden on the individual and the harm the government seeks to remedy through the condition. *Dolan*, 512 U.S. at 386-91."

¶ 34　　Plaintiff's argument on this issue is brief and not well developed. See, *e.g.*, *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56 (reiterating that a reviewing court is entitled to have issues clearly defined and is not simply a depository into which a party may dump the burden of argument and research). Plaintiff seemingly relies upon the doctrine to support its argument that the County and the villages could not, through the IGA, agree between themselves to do away with plaintiff's rights under the takings clause of the United States and Illinois Constitutions, by requiring them to pay impact fees that are not uniquely attributable to its development. According to plaintiff, the fees were set regardless of plaintiff's actual use of the property, and that use of the property years after the fees were established does not meet the necessary "essential nexus" and "rough proportionality" required under the two-part test.

¶ 35　　The County asserts that plaintiff freely chose to annex the three parcels into the Village to conduct its development. Plaintiff did not have a right to annex the properties, nor was it required to do so. The County also argues that the appellate court properly found that there is an essential nexus between the condition burdening rights and a legitimate state interest. Specifically, the minimization or reduction of traffic congestion is a legitimate state interest, and there is a nexus between preventing congestion and providing road improvements to ease it.

Additionally, according to the County, the appellate court correctly found there is a rough proportionality between the burden on plaintiff and the harm the County sought to remedy via the condition.

¶ 36      We find no basis, and plaintiff has provided us with none, to disturb the appellate court's holding that, because both requirements are met, the unconstitutional conditions doctrine does not apply in this case.

¶ 37      First, there is an essential nexus between the condition burdening rights and a legitimate state interest. The need to minimize traffic congestion is a legitimate state interest, and a nexus exists between preventing further traffic congestion and providing for road improvements to ease that congestion. See *Northern Illinois Home Builders*, 165 Ill. 2d at 32. One of the intended purposes of the County and the villages entering into the IGA was to establish construction funding for future County highway improvements in the central Lake County area. This construction funding, as specified in the IGA, would allow residents to benefit from highway improvements intended to ensure traffic is efficiently transported through the area. The IGA also provided that the County and the Village would reevaluate the traffic and transportation effects of any future developments to identify improvements that may be required.

¶ 38      Similarly, as to the second requirement, no precise mathematical calculation is required under the rough proportionality standard, but the government must make some sort of individualized determination that the required dedication is related in both nature and extent to the impact of the proposed development. *Dolan*, 512 U.S. at 391. Here, the three parcels were zoned agricultural before the annexation and were reclassified into the category of "R-1 Single Family Residential Zoning District" thereafter. Plaintiff acknowledges that it has been using its property as a commercial clean-fill operation since annexation with the expected completion of all of plaintiff's improvements on the three parcels by 2035. Under the IGA, the County agreed to design and construct road improvements in exchange for reimbursement of half of the construction costs from developers assessed based on the number of acres within each development. The cost for the other half would be paid by the County as a public benefit. Specifically, the IGA established six "Highway Improvement Areas" within the central Lake County area, and the parties created a schedule of fees for each subarea. The agreement further provided

that these fees would be divided by the number of developable areas within each subarea and assessed against future developments, based on the number of acres contained within each development. These individualized criteria sufficiently establish the nexus between the nature and extent of the impact of the proposed development.

¶ 39　　　For these reasons, we find no basis to disturb the appellate court's holding that, because both requirements are met, the unconstitutional conditions doctrine is inapplicable here.

¶ 40　　　　　　　　　　　　　　　　　CONCLUSION

¶ 41　　　Accordingly, the judgment of the appellate court is affirmed.

¶ 42　　　Judgments affirmed.